**ALLAN D. SARVER** SBN106282
Attorney at Law
16000 Ventura Boulevard
Suite 1000
Encino, California 91436

Telephone No.: (818) 981-0581
Facsimile No.: (818) 981-0026

Attorney for Debtor
Jennifer Rizzo

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

|  |  |
|---|---|
| JENNIFER A. RIZZO | Case No. 2:13-BK-30580RK<br><br>Chapter 7<br><br>DEBTOR'S SUPPLEMENTAL REPLY BRIEF IN FURTHER OPPOSITION TO MOTION TO REOPEN BANKRUPTCY OF JENNIFER A. RIZZO, NOTICE OF MOTION FOR AN ORDER DIRECTING  RULE 2004 EXAMINATION OF JENNIFER A. RIZZO (HENDRICKSON), NOTICE OF MOTION FOR REVOCATION OF CHAPTER 7 BANKRUPTCY<br><br>Date: July 28, 2015<br>Time: 2:30 p.m.<br>Ctrm: |
| Debtor, |  |

Opposition to Motion to Reopen
Bankruptcy Case

1

1 **TO: THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE, MICHAEL**
2 **RIZZO ("MOVANT"), AND ALL OTHER PARTIES IN INTEREST:**

3      **COMES NOW:** Jennifer A. Rizzo, (hereinafter, "Debtor") in support of
4 her Supplemental Reply Brief to the Motion as above captioned, as
5 follows:

6 **A. INTRODUCTION**

7      On July 28, 2015 there came on for hearing, the Motion by Michael
8 Rizzo as above captioned. At the conclusion of the hearing, the court
9 ordered Michael Rizzo (hereinafter "Movant") to demonstrate with
10 admissible evidence that he is a "creditor" in accordance with the three
11 part test provided for under the Code.  Movant has submitted his
12 Supplemental Brief, arguing that since he was listed as a creditor in
13 Debtor's schedule F, as amended, he is a creditor with standing to seek
14 revocation of the Debtor's discharge. No additional evidence is provided.

15      Debtor has previously argued that Movant is not a creditor for the
16 simple reason that he so acknowledged it at a meeting of creditors on
17 September 12, 2013.  (Debtor's Opp. Exh. G, P.72-73, Dkt. 70)

18      "MR. SIEGEL: All right, sir.  You're a stated creditor, so if you
19 have questions, go ahead.

20      MR. RIZZO: Yeah. I'm not a creditor, and I don't know why I am
21 listed as a creditor..."

22      Movant's Supplemental Brief argues that intentional
23 misrepresentations were made to this Honorable Court by Mr. Rizzo in an
24 effort for him to gain an advantage in this proceeding.  While mis-
25 statements were made on the record during argument by the undersigned,
26 the same were immediately corrected and substantially prior to being

27 Opposition to Motion to Reopen
Bankruptcy Case
28                  2

1 | raised by Movant in his Brief or otherwise. A Declaration correcting the
2 | record was filed on August 3, 2015. (DKT. 81) and served on the Movant.
3 | In the Motion, at Page 3:21-26 Movant makes one further veiled
4 | attempt at tying an error (corrected) before the Court with an
5 | unsupported conclusion that Debtor made financial misrepresentations to
6 | justify a 2004 examination knowing an adversary action (not timely as
7 | previously argued) will be pursued. However, he fails to submit any
8 | admissible evidence to support his contention that he was a creditor of
9 | the debtor on the Petition Date.

10 | That Plaintiff is listed on Schedule F under the title "Post-Marital
11 | Assets" does not make him a creditor as defined by Section 101(10) of the
12 | Code, as all issues involving property of the marriage were addressed in
13 | the Judgment (Dissolution) entered in the family court (LASC Case No.
14 | BD532436).

15 | **II.   MEMORANDUM OF POINTS AND AUTHORITIES**

16 | **A.   MOVANT HAS FAILED TO SUBMIT ADMISSIBLE EVIDENCE SUBSTANTIATING HIS**
17 | **CLAIM THAT HE IS A CREDITOR OF THE DEBTOR, VESTED WITH STANDING TO**
18 | **PROSECUTE AN ACTION UNDER 11 U.S.C. §727.**

19 | This Court gave Movant the opportunity to demonstrate why he is a
20 | creditor as
21 | defined by the Code at 11 U.S.C. §101(10) which provides as follows:
22 | "(10) The term "creditor" means—
23 | (A) entity that has a claim against the debtor that arose at
24 | the time of or before the order for relief concerning the debtor;
25 | (B) entity that has a claim against the estate of a kind
26 | specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this
27 |
28 | Debtor's Reply Brief to Plaintiff's Supplemental Brief                3

1  title; or

2          (C) entity that has a community claim."

3       Movant has spent a great deal of time alleging that he has standing
4  before this court; specifically, claiming that he was listed on Schedule
5  F even though the designation was simply out of an abundance of caution,
6  and based on communications between Debtor and Movant.

7       His designation on Schedule F (as amended, from the original listing
8  of "personal") of "post-martial assets" results from an e-mail he sent to
9  the Debtor post-filing as shown by Exhibit "J" hereto.  Clearly not to
10  list Movant would have been argued as yet another error which Debtor
11  intentionally made in what he contends is a pattern of misrepresentations
12  and omissions by Debtor in her bankruptcy schedules.

13       The listing on Schedule F notwithstanding, prior to the petition
14  date, a Judgment (Dissolution) (the "Judgment") was entered in the Los
15  Angeles Superior Court on December 12, 2012, a true and correct and
16  certified copy of which is Exhibit "K" hereto resolving all claims
17  between the parties. All post marital assets were distributed per the
18  Judgment's orders.  The equalization was therefore final as to all
19  obligations between the parties and Exhibit J, simply an improper
20  statement of entitlement to any post-marital assets as same were
21  distributed in furtherance of the parties dissolution Judgment.

22  **B.   THE JUDGMENT IS A FINAL STATEMENT OF ALL PROPERTY RIGHTS AND**
23  **OBLIGATIONS.**

24       The Judgment reflects the agreement between Debtor and Movant and in
25  pertinent part, this Court's attention is directed to the following
26  provisions of the Judgment:

27

28  Debtor's Reply Brief to Plaintiff's Supplemental Brief        4

1    "10.1.2 states specifically:  the parties released each other from
2  the following claims:

3    "10.1.2 <u>Watts</u> credit, <u>In re Marriage of Watts</u> (1985) 171 25 Cal. App
4  3d 366, and all rights to reimbursement to which a party or the community
5  may be entitled as a result of one party's use of community assets or
6  receipt of community rental income since the date of separation."

7    Further and as provided for at Paragraphs 10.1.6 - 10.1.8, the
8  parties agreed to a release for "Reimbursement under Family Code §§915,
9  916 and 920."

10   Debtor and Movant released each other from all claims for
11 reimbursement from the other and/or community estate regarding loans or
12 payments made to or on behalf of the parties and/or the community estate
13 prior to or subsequent to the date of separation through the date of
14 entry of the Judgment herein.

15   In furtherance of the general release of claims which may have
16 existed, Movant and Debtor further executed a release of all unknown
17 claims pursuant to Cal. Civ. Code §1542:

18   There are no claims which Movant may assert against Debtor in this
19 proceeding and there is nothing in Movant's supplemental brief which
20 demonstrates with admissible evidence, a contrary position.  Movant
21 continues to use these proceedings as a forum to further his own personal
22 agenda, in an ongoing battle over child custody and issues related to
23 where the minor child will be educated. (See Debtor's Opp. Exh. F, Dkt.70
24 P.57)

25   This Court is further directed to Section 12 (page 19) of the
26 Judgment which states that neither party can incur any debt as to which

27

28   Debtor's Reply Brief to Plaintiff's Supplemental Brief          5

1  the other may be liable.

2      The sole basis for Movant arguing that he is a "creditor" of the

3  Debtor is his being identified on Schedule F as amended; however, under

4  applicable California Law and therefore applicable Bankruptcy Law, it is

5  simply impossible for Movant to demonstrate that he is a creditor as that

6  term is defined by the Code, which is why he has been unable to provide

7  admissible evidence of his alleged status as a creditor to this Honorable

8  Court. He was the opportunity to provide same at the prior hearing on

9  July 24, 2015.  He still has not.  It does not exist.

10  **III. CONCLUSION**

11      Movant has failed to submit admissible evidence which demonstrates

12  that he is a "creditor" as that term is defined under the Code. For the

13  reasons stated herein and in the underlying opposition, Debtor therefore

14  prays that the Court deny the Motion to Reopen and grant such further

15  relief as this court deems proper.

16

17  Dated: August 24, 2015

                                    _____
18                                  ALLAN D. SARVER ESQ.
                                    Attorney for Debtor
19                                  Jennifer A. Rizzo

20

21

22

23

24

25

26

27

28  Debtor's Reply Brief to Plaintiff's Supplemental Brief          6

**DECLARATION OF JENNIFER A. RIZZO**

I, JENNIFER A. RIZZO declare that:

1.   If called upon as a witness I would testify that the within declaration is true and correct of my own personal knowledge with the exception of those matters stated on information and believe which I believe to be true and correct.

2.   The designation of Debtor on Amended Schedule F (from the original listing of "personal" on the original filing) characterizing the listing as post-martial assets" results from an e-mail Movant sent to me as shown by Exhibit "J" hereto.   It was my belief, based on the history of our post-separation relationship that not listing Movant would have been argued as yet another error which I had allegedly intentionally made in my bankruptcy schedules.   Therefore, his inclusion on Schedule F was simply out of an abundance of caution.

3.   I believe that the Dissolution Judgment resolved all property issues between us and that he was not and is not entitled to any amount for post-marital assets as his email references.

4.   I declare under penalty of perjury that the within declaration is true and correct and that this Declaration was executed on the 24th day of August, 2015 at Encino, California.

JENNIFER A. RIZZO

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16000 Ventura Blvd Suite 1000, Encino, CA 91436
A true and correct copy of the foregoing document entitled (*specify*): DEBTOR'S SUPPLEMENTAL REPLY BRIEF IN FURTHER OPPOSITION TO MOTION TO REOPEN BANKRUPTCY OF JENNIFER A. RIZZO, NOTICE OF MOTION FOR AN ORDER DIRECTING RULE 2004 EXAMINATION OF JENNIFER A. RIZZO (HENDRICKSON), NOTICE OF MOTION FOR REVOCATION OF CHAPTER 7 BANKRUPTCY, is to be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 8/24/15, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Allan D Sarver    ADSarver@aol.com
- Alfred H Siegel (TR)    Al.siegel@asiegelandassoc.com,
  Lisa.irving@asiegelandassoc.com;Margo.tzeng@asiegelandassoc.com;asiegel@ecf.epiqsystems.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*)8/24/15, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

x Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 8/24/15, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Robert N. Kwan          Via Personal Delivery
United States Bankruptcy Court
255 E. Temple Street, Ctrm 1682
Los Angeles, CA 90012

Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/24/15 | M. Swanston | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

In Re: Jennifer A. Rizzo
        Chapter 7 Case No. 2:13-bk-30580RK


Attachment to Proof of Service


2. Service Via U.S. Mail

**Debtor**
Jennifer A. Rizzo
924 N. Keystone Street
Burbank, CA 91506

**Movant in Pro Per**
Michael Rizzo Jr.
4498 Woodman Avenue Apt A321
Sherman Oaks, CA 91423

**Chapter 7 Trustee**
Alfred H. Siegel
Chapter 7 Trustee
21650 Oxnard Street Suite 500
Woodland Hills, CA 91367



JA Rizzo <newlifeandfreedom@gmail.com>

## Re: August ASD Payment

**Jennifer Rizzo** <jenni.rizzo@gmail.com>                     Sun, Jun 2, 2013 at 7:12 PM
To: JA Rizzo <newlifeandfreedom@gmail.com>

———— Forwarded message ————
From: **Mike Rizzo** <rizzom453@yahoo.com>
Date: Sun, May 19, 2013 at 11:07 PM
Subject: Re: August ASD Payment
To: Jennifer Rizzo <jenni.rizzo@gmail.com>

I have paid your $32.50 — perhaps you would like to talk this week about the $58,000 in
post-marital assets that you have already received from me after we separated?



| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Christine V. Twining, Esq. (SBN #233937)<br>The Law Office of Christine V. Twining<br>11693 San Vicente Blvd., #131<br>Los Angeles, CA 90049.<br><br>TELEPHONE NO.: (310)694-372   FAX NO. *(Optional):* (424)652-2274<br>E-MAIL ADDRESS *(Optional):* twininglaw@gmail.com<br>ATTORNEY FOR *(Name):* Respondent, Michael Rizzo Jr. | FOR COURT USE ONLY<br><br>**FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>DEC 11 2012<br><br>JOHN A. CLARKE, CLERK<br><br>____ KINARD DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: SAME
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: CENTRAL

MARRIAGE OR PARTNERSHIP OF
PETITIONER: JENNIFER RIZZO

RESPONDENT: MICHAEL RIZZO, JR.

| JUDGMENT | CASE NUMBER: |
|---|---|
| [X] DISSOLUTION    [ ] LEGAL SEPARATION    [ ] NULLITY<br>　[ ] Status only<br>　[ ] Reserving jurisdiction over termination of marital or domestic<br>　　　partnership status<br>　[ ] Judgment on reserved issues    DEC 11 2012<br>Date marital or domestic partnership status ends: | BD 532 436 |

1.  [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders.
    The restraining orders are contained on page(s) _____ of the attachment. They expire on *(date):*

2.  This proceeding was heard as follows: [ ] Default or uncontested [ ] By declaration under Family Code section 2336
    [ ] Contested  [X] Agreement in court
    a.  Date: DEC 11 2012  Dept.: **Department 2, Room 215**
    b.  Judicial officer *(name):* **SCOTT M. GORDON**  [ ] Temporary judge
    c.  [ ] Petitioner present in court       [ ] Attorney present in court *(name):* Taylor Bouchard
    d.  [ ] Respondent present in court       [ ] Attorney present in court *(name):* Christine V. Twining
    e.  [ ] Claimant present in court *(name):*       [ ] Attorney present in court *(name):*
    f.  [ ] Other *(specify name):*

3.  The court acquired jurisdiction of the respondent on *(date):*
    a.  [ ] The respondent was served with process.
    b.  [X] The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**

4.  a.  [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the
        status of single persons
        (1)  [X] on *(specify date):* DEC 11 2012
        (2)  [ ] on a date to be determined on noticed motion of either party or on stipulation.
    b.  [ ] Judgment of legal separation is entered.
    c.  [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify):*

    d.  [ ] This judgment will be entered nunc pro tunc as of *(date):*
    e.  [ ] Judgment on reserved issues.
    f.  The [ ] petitioner's [ ] respondent's former name is restored to *(specify):*
    g.  [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
    h.  [X] This judgment contains provisions for child support or family support. Each party must complete and file with the court a
        *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the
        court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice
        of Rights and Responsibilities—Health-Care Costs and Reimbursement Procedures and Information Sheet on Changing a
        Child Support Order* (form FL-192) is attached.

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. July 1, 2012]

**JUDGMENT
(Family Law)**

Legal
Solutions
Plus

Family Code, §§ 2024, 2340,
2343, 2346

| CASE NAME: *(Last name, first name of each party)* | CASE NUMBER: |
| --- | --- |
| MICHAEL JR. | BD 532 436 |

4. i. [X] The children of this marriage or domestic partnership are:

   (1) [X] Name          Birthdate

       James Michael Rizzo   10/10/2003

   (2) [ ] Parentage is established for children of this relationship born prior to the marriage or domestic partnership

   j. [X] Child custody and visitation (parenting time) are ordered as set forth in the attached
   (1) [X] Settlement agreement, stipulation for judgment, or other written agreement which contains the information required by Family Code section 3048(a).
   (2) [ ] *Child Custody and Visitation Order Attachment* (form FL-341).
   (3) [ ] *Stipulation and Order for Custody and/or Visitation of Children* (form FL-355).
   (4) [ ] Previously established in another case. Case number:    Court:

   k. [X] Child support is ordered as set forth in the attached
   (1) [X] Settlement agreement, stipulation for judgment, or other written agreement which contains the declarations required by Family Code section 4065(a).
   (2) [ ] *Child Support Information and Order Attachment* (form FL-342).
   (3) [ ] *Stipulation to Establish or Modify Child Support and Order* (form FL-350).
   (4) [ ] Previously established in another case. Case number:    Court:

   l. [X] Spousal, domestic partner, or family support is ordered:
   (1) [ ] Reserved for future determination as relates to [ ] petitioner [ ] respondent
   (2) [ ] Jurisdiction terminated to order spousal or partner support to [ ] petitioner [ ] respondent
   (3) [ ] As set forth in the attached *Spousal, Partner, or Family Support Order Attachment* (form FL-343).
   (4) [X] As set forth in the attached settlement agreement, stipulation for judgment, or other written agreement.
   (5) [ ] Other *(specify):*

   m. [X] Property division is ordered as set forth in the attached
   (1) [X] Settlement agreement, stipulation for judgment, or other written agreement.
   (2) [ ] *Property Order Attachment to Judgment* (form FL-345).
   (3) [ ] Other *(specify):*

   n. [X] Attorney fees and costs are ordered as set forth in the attached
   (1) [X] Settlement agreement, stipulation for judgment, or other written agreement.
   (2) [ ] *Attorney Fees and Costs Order* (form FL-346).
   (3) [ ] Other *(specify):*

   o. [X] Other *(specify):* See Continuation of Judgment.

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date: XXXXXXXXXXXXXXXXXXXXX

5. Number of pages attached: __26__

JUDICIAL OFFICER

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

[X] SIGNATURE FOLLOWS LAST ATTACHMENT

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar property interest. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

# NOTICE OF RIGHTS AND RESPONSIBILITIES

## Health-Care Costs and Reimbursement Procedures

**IF YOU HAVE A CHILD SUPPORT ORDER THAT INCLUDES A PROVISION FOR THE REIMBURSEMENT OF A PORTION OF THE CHILD'S OR CHILDREN'S HEALTH-CARE COSTS AND THOSE COSTS ARE NOT PAID BY INSURANCE, THE LAW SAYS:**

**1. Notice.** You must give the other parent an itemized statement of the charges that have been billed for any health-care costs not paid by insurance. You must give this statement to the other parent within a reasonable time, but no more than 30 days after those costs were given to you.

**2. Proof of full payment.** If you have already paid all of the uninsured costs, you must (1) give the other parent proof that you paid them and (2) ask for reimbursement for the other parent's court-ordered share of those costs.

**3. Proof of partial payment.** If you have paid only your share of the uninsured costs, you must (1) give the other parent proof that you paid your share, (2) ask that the other parent pay his or her share of the costs directly to the health-care provider, and (3) give the other parent the information necessary for that parent to be able to pay the bill.

**4. Payment by notified parent.** If you receive notice from a parent that an uninsured health-care cost has been incurred, you must pay your share of that cost within the time the court orders; or if the court has not specified a period of time, you must make payment (1) within 30 days from the time you were given notice of the amount due, (2) according to any payment schedule set by the health-care provider, (3) according to a schedule agreed to in writing by you and the other parent, or (4) according to a schedule adopted by the court.

**5. Disputed charges.** If you dispute a charge, you may file a motion in court to resolve the dispute, but only if you pay that charge before filing your motion.

If you claim that the other party has failed to reimburse you for a payment, or the other party has failed to make a payment to the provider after proper notice has been given, you may file a motion in court to resolve the dispute. The court will presume that if uninsured costs have been paid, those costs were reasonable. The court may award attorney fees and costs against a party who has been unreasonable.

**6. Court-ordered insurance coverage.** If a parent provides health-care insurance as ordered by the court, that insurance must be used at all times to the extent that it is available for health-care costs.

a. **Burden to prove.** The party claiming that the coverage is inadequate to meet the child's needs has the burden of proving that to the court.

b. **Cost of additional coverage.** If a parent purchases health-care insurance in addition to that ordered by the court, that parent must pay all the costs of the additional coverage. In addition, if a parent uses alternative coverage that costs more than the coverage provided by court order, that parent must pay the difference.

**7. Preferred health providers.** If the court-ordered coverage designates a preferred health-care provider, that provider must be used at all times consistent with the terms of the health insurance policy. When any party uses a health-care provider other than the preferred provider, any health-care costs that would have been paid by the preferred health provider if that provider had been used must be the sole responsibility of the party incurring those costs.

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
FL-192 [Rev. July 1, 2007]

**NOTICE OF RIGHTS AND RESPONSIBILITIES**
**Health-Care Costs and Reimbursement Procedures**

Legal
Solutions
& Plus

Family Code, §§ 4062, 4063

**INFORMATION SHEET ON CHANGING A CHILD SUPPORT ORDER**

**General Information**

The court has just made a child support order in your case. This order will remain the same unless a party to the action requests that the support be changed (modified). An order for child support can be modified only by filing a motion to change child support and serving each party involved in your case. If both parents and the local child support agency (if it is involved) agree on a new child support amount, you can complete, have all parties sign, and file with the court a *Stipulation to Establish or Modify Child Support and Order* (form FL-350) or *Stipulation and Order (Governmental)* (form FL-625).

**When a Child Support Order May Be Modified**

The court takes several things into account when ordering the payment of child support. First, the number of children is considered. Next, the net incomes of both parents are determined, along with the percentage of time each parent has physical custody of the children. The court considers both parties' tax filing status and may consider hardships, such as a child of another relationship. An existing order for child support may be modified when the net income of one of the parents changes significantly, the parenting schedule changes significantly, or a new child is born.

**Examples**

- You have been ordered to pay $500 per month in child support. You lose your job. You will continue to owe $500 per month, plus 10 percent interest on any unpaid support, unless you file a motion to modify your child support to a lower amount and the court orders a reduction.
- You are currently receiving $300 per month in child support from the other parent, whose net income has just increased substantially. You will continue to receive $300 per month unless you file a motion to modify your child support to a higher amount and the court orders an increase.
- You are paying child support based upon having physical custody of your children 30 percent of the time. After several months it turns out that you actually have physical custody of the children 50 percent of the time. You may file a motion to modify child support to a lower amount.

**How to Change a Child Support Order**

To change a child support order, you must file papers with the court. *Remember:* You must follow the order you have now.

**What forms do I need?**

If you are asking to change a child support order open with the local child support agency, you must fill out one of these forms:
- FL-680, *Notice of Motion (Governmental)* **or** FL-683 *Order to Show Cause (Governmental)* **and**
- FL-684, *Request for Order and Supporting Declaration (Governmental)*

If you are asking to change a child support order that is **not** open with the local child support agency, you must fill out one of these forms:
- FL-301, *Notice of Motion* **or** FL-300, *Order to Show Cause* **and**
- FL-310, *Application for Order and Supporting Declaration* **or**
- FL-390, *Notice of Motion and Motion for Simplified Modification of Order for Child, Spousal, or Family Support*

You must also fill out one of these forms:
- FL-150, *Income and Expense Declaration* **or** FL-155, *Financial Statement (Simplified)*

**What if I am not sure which forms to fill out?**

Talk to the family law facilitator at your court.

**After you fill out the forms,** file them with the court clerk and ask for a hearing date. Write the hearing date on the form.
The clerk will ask you to pay a filing fee. If you cannot afford the fee, fill out these forms, too:
- Form FW-001, *Application for Waiver of Court Fees and Costs*
- Form FW-003, *Order on Application for Waiver of Court Fees and Costs*

**You must serve the other parent.** If the local child support agency is involved, serve it too.
This means someone 18 or over—**not you**—must serve the other parent copies of your filed court forms at least **16 court days** before the hearing. Add **5 calendar days** if you serve by mail within California (see Code of Civil Procedure section 1005 for other situations). **Court days** are weekdays when the court is open for business (Monday through Friday except court holidays). **Calendar days** include all days of the month, including weekends and holidays. To determine court and calendar days, go to *www.courtinfo.ca.gov/selfhelp/courtcalendars/*.

The server must also serve blank copies of these forms:
- FL-320, *Responsive Declaration to Order to Show Cause or Notice of Motion* **and** FL-150, *Income and Expense Declaration,* **or**
- FL-155, *Financial Statement (Simplified)*

Then the server fills out and signs a *Proof of Service* (form FL-330 or FL-335). Take this form to the clerk and file it.

**Go to your hearing and ask the judge to change the support.** Bring your tax returns from the last two years and your last two months' pay stubs. The judge will look at your information, listen to both parents, and make an order. After the hearing, fill out:
- FL-340, *Findings and Order After Hearing* **and**
- FL-342, *Child Support Information and Order Attachment*

**Need help?**

Contact the family law facilitator in your county or call your county's bar association and ask for an experienced family lawyer.

**NOTICE OF RIGHTS AND RESPONSIBILITIES**
Health-Care Costs and Reimbursement Procedures

The Court finds that the parties herein have entered into a written Deal Memorandum on July 19,

2012 as to all issues. IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1    **FINDINGS**

1.1    The Court finds that the parties to this Judgment, Petitioner Jennifer Rizzo ("Petitioner")

and Respondent Michael Rizzo, Jr. ("Respondent") were married on October 2, 1998 and have been

husband and wife continuously since that date.

1.2    The Court finds that there is one minor child, JAMES MICHAEL RIZZO, born October

10, 2003; that there are no other children of this marriage, and that the parties have not adopted any

children.

1.3    The Court finds that the Petitioner has been a resident of the State of California for at least

6 months and of the County of Los Angeles, State of California, for at least 3 months immediately prior

to the filing of the Petition. The Court finds that Petitioner initiated this Dissolution of Marriage action

against Respondent by filing the Petition of Dissolution on September 24, 2010.

1.4    The Court finds that irreconcilable differences have arisen between the parties and have

caused an irremediable breakdown of their marriage and that there is no possibility of saving the marriage

through counseling, a waiting period or any other means whatsoever.

1.5    The Court finds that the parties have a dispute regarding their date of separation. For

purposes of compromise, the parties stipulate and agree that they became separated on May 1, 2010, and

have been separated continuously thereafter. The Court finds that the effective date of their separation is

May 1, 2010 (hereinafter the "date of separation").

1.6    The parties each represent that he or she understands that California law provides that each

has a fiduciary duty toward the other regarding each party's property; that the parties understand their legal

rights of discovery, including subpoenas and deposition testimony under oath, interrogatories, and other

discovery; that their respective counsel have advised the parties to seek full documentation, disclosure and

discovery but the parties have voluntarily chosen to give up and waive the right of further discovery and

to negotiate this Stipulated Judgment without relying on that duty. Neither party has promised anything

or threatened the other party or anyone else to discourage the other party from inquiry or investigation.

///

1

JUDGMENT

EXHIBIT ___ K

Z:\Clients\Rizzo\JDA.092712.wpd

1.7    Petitioner has been represented in the negotiations and preparation of this Judgment by
Taylor Bouchard, of the Law Offices of Feinberg, Mindel, Brandt & Klein, LLP; Respondent has been
represented in the negotiations and preparation of this Judgment by Christine V. Twining, of the Law
Office of Christine V. Twining; each party has carefully read this Judgment in its entirety; and both parties
have entered into this Judgment freely and voluntarily, without coercion or duress.

## 2    PARENTING PLAN

2.1    Legal custody of the minor child, JAMES MICHAEL RIZZO, born October 10, 2003,
(hereinafter "minor child", or "child") is awarded jointly to both parties. Both parties shall share the right
and responsibility to make decisions relating to the health, education and welfare of the minor child. Such
decisions shall include, but are not limited to the following:

2.1.1    Enrollment or termination of attendance in any public or private school;

2.1.2    Change in area of the child's residence;

2.1.3    Issuance of a passport.

2.2    **Regular Parenting Plan**. The parties shall equally share physical custody of the minor
child. Commencing forthwith, the child shall be in the custodial care of the Petitioner on Mondays from
after school, or 3:00 pm if there is no school, through Wednesday morning drop off at school, or 10:00 am
if there is no school. Respondent shall have the custodial care of the minor child from Wednesday after
school, or 3:00 p.m. if there is no school through Friday morning drop off at school, or 10:00 am if there
is no school. The parties shall alternate weekends from Friday after school, or 3:00 pm if there is no
school, through Monday morning drop off at school, or 10:00 am if there is no school. Petitioner shall have
the weekend of July 20 through 24, 2012 and Respondent shall have alternating weekends thereafter.

2.3    The parties shall be permitted to volunteer and participate in the minor child's after school
care on that party's non-custodial days, provided that party does not remove the minor child from the after
school program unless the parties mutually agreed upon the child's removal in advance in writing. The
parties' emails or texts are sufficient to satisfy the written consent requirement. Should either party choose
to participate in the minor child's after school program, he/she shall use his/her best efforts to ensure that
the minor child completes his homework prior to playing any games. Any additional time spent with the
minor child according to this provision shall not change the parties' time share for any purposes

2

JUDGMENT

EXHIBIT K

Z:\Clients\Rizzo\JDA.092712.wpd

1  whatsoever.

2      2.4   **Holidays and Special Days.** The parties shall share the minor child during holidays and

3  vacations according to the following schedule which shall supersede the regular time share with no right

4  to make up time by either party.

5      2.4.1  Halloween:

6          2.4.1.1.1    Commencing in 2012, and in each even-numbered year thereafter,

7  Petitioner shall have custody of the minor child for Halloween from after school or, if no school beginning

8  at 10:00 a.m. until 10:00 am the next morning.

9          2.4.1.1.2    Commencing in 2013, and in each odd-numbered year thereafter,

10  Respondent shall have custody of the minor child for Halloween from after school or, if no school

11  beginning at 10:00 a.m. until 10:00 a.m. the next morning.

12      2.4.2  Valentine's Day:

13          2.4.2.1.1    Commencing in 2013, and in each odd-numbered year thereafter,

14  Petitioner shall have custody of the minor child for Valentine's Day from after school, or if no school

15  beginning at 10:00 a.m. the next morning.

16          2.4.2.1.2    Commencing in 2014, and in each even-numbered year thereafter,

17  Respondent shall have custody of the minor child for Valentine's Day from after school, or if no school

18  beginning at 10:00 a.m. the next morning.

19      2.4.3  Thanksgiving:

20          2.4.3.1.1    Commencing in 2012, and in each even-numbered year thereafter,

21  Respondent shall have custody of the minor child on Thanksgiving Day, from 10:00 a.m. until the

22  following day at 10:00 a.m., at which point the parties shall resume their regular schedule.

23          2.4.3.1.2    Commencing in 2013, and in each odd-numbered year thereafter,

24  Petitioner shall have custody of the minor child on Thanksgiving Day, from 10:00 a.m. until the following

25  day at 10:00 a.m., at which point the parties shall resume their regular schedule.

26      2.4.4  Christmas Eve and Christmas Day: Commencing in 2012, and for each and every

27  year thereafter, Respondent shall have custody of the minor child on Christmas Eve Day, from 10:00 a.m.

28  until the following day at 10:00 a.m., at which point Petitioner shall have custody of the minor child on

3

1  Christmas Day, from 10:00 a.m. until 10:00 a.m. the following day. The parties shall resume their regular

2  custodial schedule or their winter break schedule thereafter.

3      2.4.5  New Year's Eve and New Year's Day:  Commencing in 2012, and for each and

4  every even-numbered year thereafter, Respondent shall have custody of the minor child on New Year's

5  Eve, from 10:00 a.m. until the following day at 10:00 a.m, at which point Petitioner shall have custody of

6  the minor child on New Year's Day, from 10:00 a.m. to 10:00 a.m. the following day. The parties shall

7  resume their regular custodial schedule or their winter break schedule thereafter. Commencing in 2013,

8  and for each and every odd-numbered year thereafter, Petitioner shall have custody of the minor child on

9  New Year's Eve, from 10:00 a.m. until the following day at 10:00 a.m, at which point Respondent shall

10  have custody of the minor child on New Year's Day, from 10:00 a.m. to 10:00 a.m. the following day. The

11  parties shall resume their regular custodial schedule or their winter break schedule thereafter.

12      2.4.6  Martin Luther King's Birthday: Shall be exercised by the party normally having such

13  weekend, which weekend shall be extended until Tuesday drop-off at school, or 10:00 a.m. if no school.

14      2.4.7  Easter:

15      2.4.7.1  Commencing in 2013, and for each and every odd-numbered year thereafter,

16  Petitioner shall have custody of the minor child on Easter Sunday, from 10:00 a.m. until the following day

17  at 10:00 a.m.

18      2.4.7.2 Commencing in 2014, and for each and every even-numbered year thereafter,

19  Respondent shall have custody of the minor child on Easter Sunday, from 10:00 a.m. until the following

20  day at 10:00 a.m.

21      2.4.8  Mother's Day and Father's Day Weekend:

22      2.4.8.1 Petitioner shall have custody of the minor child on Mother's Day from 10:00

23  a.m. until 10:00 a.m. the following day. Respondent shall have custody of the minor child for that same

24  period on Father's Day.

25      2.4.9  Summer Vacation

26      2.4.9.1 Commencing in 2013, Petitioner and Respondent shall be entitled to one

27  uninterrupted two week, fourteen (14) days of summer vacation with the minor child.

28      2.4.9.2 Each party shall be required to provide the other with thirty (21) days

4

JUDGMENT

EXHIBIT K

Z:\Clients\Rizzo\JDA.092712.wpd

advance written notice of his or her intended vacation dates. Petitioner shall have first choice in all odd numbered years and Respondent shall have first choice in all even numbered years. A conflict for the purpose of this section is defined only as an intended vacation date(s), and shall only occur in the event that both parties' proposed vacation dates overlap.

2.4.9.3 At least seven (7) days before leaving on vacation, the party planning the vacation shall provide the other party with a basic itinerary to include the name, address and telephone number of the hotel or other accommodations, the mode of transportation and at least one contact number. Transportation shall include any airline flights including company, flight numbers; and arrival and departure time and locations.

2.4.9.4 A party vacationing with the minor child away from that party's residence shall enable the other party to have reasonable telephone contact with the minor child, including but not limited to providing the other party with the telephone numbers, dates and reasonable times when the minor child will be available to speak to the other party.

2.4.10 Independence Day: Commencing in 2012, and for each even-numbered year thereafter, Respondent shall have custody of the minor child on Independence Day (also known as July 4th), from 10:00 a.m. until the following day at 10:00 a.m., at which point the parties shall resume the regular custodial schedule. Commencing in 2013, and for each odd-numbered year thereafter, Petitioner shall have custody of the minor child on Independence Day (also known as July 4th), from 10:00 a.m. until the following day at 10:00 a.m., at which point the parties shall resume the regular custodial schedule.

2.4.11 Memorial Day Weekend: Shall be exercised by the party normally having such weekend, which weekend shall be extended until Tuesday morning school-drop off, or 10:00 a.m. if no school.

2.4.12 President's Day Weekend (3-day weekend): Shall be exercised by the party normally having such weekend, which weekend shall be extended until Tuesday morning school-drop off, or 10:00 a.m. if no school.

2.4.13 Labor Day Weekend: Shall be exercised by the party normally having such weekend, which weekend shall be extended until Tuesday morning school-drop off, or 10:00 a.m. if no school.

2.4.14 Parties' Birthdays:

5


EXHIBIT K

2.4.14.1    Commencing in 2012 and in each year thereafter, Petitioner shall have custody of the minor child on her birthday (October 15) from after school, or 10:00 a.m. if no school, on the day of her birthday until 10:00 a.m. the following morning.

2.4.14.2    Commencing in 2013 and in each year thereafter, Respondent shall have custody of the minor child on his birthday (March 16) from after school, or 10:00 am if no school, on the day of his birthday until 10:00 a.m. the following morning.

2.4.15    Minor Child's Birthday:

2.4.15.1    Commencing in 2012 and in each even-numbered year thereafter, Respondent shall have custody of the minor child on the minor child's birthday from 10:00 a.m. until 10:00 a.m. the following morning.

2.4.15.2    Commencing in 2013 and in each year odd-numbered year thereafter, Petitioner shall have custody of the minor child on the minor child's birthday from 10:00 am until 10:00 a.m. the following morning.

2.4.15.3    Should the minor child's birthday fall on a school day, the non-designated custodial parent shall be permitted to take the minor child out for lunch.

2.5    The parties shall meet and confer with regard to the minor child's middle school placement.

2.6    Each party shall advise all schools and health care providers of the name, address and phone numbers of the other party in any registration, enrollment, emergency notification or other forms in which family information is requested.

2.7    In emergency medical situations, either party may authorize any and all actions necessary to protect the health and welfare of the child, including, without limitation, consent to emergency surgical procedures or treatment, and such party shall notify the other thereof as soon as reasonably possible.

2.8    Neither party shall change the residence of the minor child from the State of California and from the county of Los Angeles or the child's current school district without the prior written consent of the other parent or further order of the Court.

2.9    Jurisdiction of the Court: This Court has jurisdiction over the minor child as California is the minor child's home state. Each party personally executed the within Stipulated Judgment, both parties have knowledge of their right to a hearing in this matter, and both parties waive their right to the hearing

6



JUDGMENT

Z:\Clients\Rizzo\JDA.092712.wpd

at this time based upon the within Stipulated Judgment. The parties agree that the habitual residence of the minor child is the United States of America. Both parties acknowledge being advised that any violation of this Stipulated Judgment may result in civil or criminal penalties, or both.

## 3    CHILD SUPPORT

3.1    As and for the support of the minor child, JAMES MICHAEL RIZZO, born October 10, 2003, Respondent shall pay to Petitioner the sum of $500.00 per month, commencing August 1, 2012, payable one-half on the first and one-half on the fifteenth days of each month. The Court shall retain jurisdiction over the issue of child support until the child graduates from high school, dies, marries or is otherwise emancipated, or until further order of Court, whichever occurs first.

3.2    As and for additional child support, Respondent shall pay to Petitioner on a monthly basis the sum of seven percent (7%) of any gross income in excess of his current income of $7,000 per month within five (5) business days of receipt of said income. A purpose of this provision is to provide child support to Petitioner for the commissions and/or bonuses Respondent receives on a monthly basis. Another purpose of this provision is an automatic payment of additional child support to Petitioner in the event the Respondent receives a bonus, or in the event that Respondent's salary increases over time. The income amount received shall be calculated prior to any deductions, such as, but not limited to deductions for taxes, pensions and other benefits. In addition, the Respondent shall, within five (5) business days of receipt of said bonus, provide Petitioner with verification of the gross amount of the income, which verification shall include a copy of the pay stub, and a photocopy of the check. Respondent shall provide Petitioner with a copy of his personal income tax returns within ten (10) days of his personal income tax returns being finalized. Petitioner shall provide Respondent with a copy of her personal income tax returns within ten (10) days of her personal income tax returns being finalized. Said additional child support is made pursuant to Marriage of Ostler & Smith (1990) 223 Cal.App.3rd 33.

3.3    The Court finds that the parties have been informed of their rights under California Child Support Guidelines, that they enter this Judgment freely and without coercion or duress, that this Judgment is in the best interest of the minor child, that his needs will be adequately met under this Judgment, and that the right to child support has not been assigned to any county and no application for public assistance is pending.

7

JUDGMENT

K

Z:\Clients\Rizzo\JDA.092712.wpd

3.4    Respondent shall maintain health insurance coverage for the benefit of the minor child for so long as he is legally eligible to do so. Each party shall provide the other with insurance coverage information, identification documents, claim forms and other documents and information necessary to utilize insurance coverage for the minor child, and to obtain reimbursement for health care services costs incurred for the child. Any reasonable medical, dental, pharmaceutical, vision, orthodontia and mental health expenses or insurance costs for the minor child not otherwise covered by insurance or by either party's employer, shall be paid equally by the Petitioner and Respondent, and each party shall reimburse the other for his or her share of such expenses paid by the other within thirty (30) days of presentation.

3.5    Each party shall pay one-half of all mutually agreed upon extracurricular activities for the minor child.

3.6    Respondent shall be entitled to declare the minor child, JAMES MICHAEL RIZZO, born October 10, 2003 as a dependent on his Federal and State income taxes, and to claim the accompanying deduction and tax credit. The parties shall execute and deliver upon demand, any and all releases necessary for such claim, including IRS form 8332. This provision is expressly modifiable and shall be reconsidered in the event either party requests a modification of child support.

3.7    The parties stipulate, and the Court makes the following findings for child support:

3.7.1    Respondent has a base salary of $7,000 per month, with ATI of $590 per month. Respondent has a tax filing status of Head of Household with two exemptions. One of the two exemptions pertains to Respondent claiming the minor child as a dependent for tax purposes.

3.7.2    Petitioner has income of $19 per hour for 40 hours per week. Petitioner's employment is temporary and may end in the immediate future. Petitioner has a tax filing status of Single with one exemption.

3.7.3    The parties have an equal timeshare factor with the minor child.

4    **SPOUSAL SUPPORT**

4.1    In lieu of base spousal support, Respondent shall pay the parties' community and Petitioner's post-separation credit card debt as set forth in section 6.3 herein. Such credit card payments shall constitute the base spousal support from Respondent to Petitioner. The base spousal support shall be non-modifiable so long as Respondent is current in his credit card payments as set forth herein. The

8

JUDGMENT

Z:\Clients\Rizzo\JDA.092712.wpd

1 | parties acknowledge that the Citibank Mastercard ending in 7676 is currently over 100 days past due.

2 | Respondent shall continue to make the stabilization payments so that the account does not become past due

3 | more than 120 days and no later than November 30, 2012, Respondent shall make the account current and

4 | eliminate any past due status. If Respondent is more than 30 days late on any one credit card obligation

5 | except the Citicard as set forth above, or is otherwise relieved of the burden of paying the credit card

6 | accounts identified in section 6.3 below through a bankruptcy proceeding, then such events shall constitute

7 | a change of circumstances warranting a modification of the base amount of spousal support payable by

8 | Respondent to Petitioner.

9 |         4.2     As and for additional spousal support, commencing August 1, 2012, Respondent shall pay

10 | to Petitioner eighteen percent (18%) on a monthly basis of all commissions, cash bonuses, income or other

11 | cash compensation in excess of $7,000 per month within five (5) business days of receipt of said income.

12 | A purpose of this provision is to provide spousal support to Petitioner for the commissions and/or bonuses

13 | Respondent receives on a monthly basis. Another purpose of this provision is an automatic payment of

14 | additional spousal support to Petitioner in the event the Respondent receives a bonus, or in the event that

15 | Respondent's salary increases over time.   The income amount received shall be calculated prior to any

16 | deductions, such as, but not limited to deductions for taxes, pensions and other benefits. In addition, the

17 | Respondent shall, within five (5) business days of receipt of said bonus, provide Petitioner with verification

18 | of the gross amount of the income, which verification shall include a copy of the pay stub, and a photocopy

19 | of the check. Respondent shall provide Petitioner with a copy of his personal income tax returns within ten

20 | (10) days of his personal income tax returns being finalized. Petitioner shall provide Respondent with a

21 | copy of her personal income tax returns within ten (10) days of her personal income tax returns being

22 | finalized. Said additional spousal support is made pursuant to Marriage of Ostler & Smith (1990) 223

23 | Cal.App.3rd 33.

24 |         4.3     The Court orders that the spousal support payments as set forth hereinabove made by

25 | Respondent to Petitioner shall be includable as gross income under Internal Revenue Service Code Section

26 | 71 and shall be allowable as deductions under Internal Revenue Service Code Section 215. Further, said

27 | spousal support payments shall be includable and deductible for California State Income Tax purposes.

28 | Therefore, Respondent shall deduct such payments on his federal and/or state income tax returns, and

9

23

EXHIBIT K

1    Petitioner shall be required to include any such payment received as income on her federal and/or state

2    income tax returns.

3        4.4    The parties stipulate, and the Court finds that Respondent has taken a draw against his future

4    commissions in the amount of $4,262.50, of which the Ostler & Smith percentage is $1,065.00 (7% child

5    support + 18% spousal support = 25%; $4,262.50 x 25% = $1,065.00). Respondent shall pay $500.00 of

6    his $1,065.00 obligation to Petitioner on or before July 30, 2012. Petitioner acknowledges that Respondent

7    has already paid her the $500.00 referenced in this section. The remaining obligation of $565.00 shall be

8    due and payable by Respondent to Petitioner within two (2) hours of the parties' execution of the instant

9    Judgment of Dissolution.

10       4.5    Respondent shall pay to Petitioner within two (2) hours of the parties' execution of the

11   instant Judgment of Dissolution the combined Ostler & Smith child and spousal support additional

12   percentages relating to his most recent commission and/or bonus income in the total sum of $11,964.23.

13   Respondent shall also provide proof of his commission/bonus income to Petitioner within the two (2) hour

14   period.

15       4.6    In the event that Respondent takes a draw against his future commissions, he must still pay

16   the Ostler & Smith distribution for both child and spousal support in a timely manner.

17       4.7    The Court's jurisdiction over spousal support for either party shall irrevocably terminate

18   on September 1, 2017. Except for the payment of credit card debt as specifically set forth in section 6.2

19   herein, the Court orders that it shall reserve jurisdiction over Petitioner's right to receive spousal support

20   from Respondent until the first of the following events:

21           4.7.1    Petitioner's remarriage;

22           4.7.2    Death of either party;

23           4.7.3    September 1, 2017; or

24           4.7.4    Further Order of the Court.

25       4.8    The Court orders that it shall not at any time reserve jurisdiction under any circumstances

26   to extend the duration of spousal support to either party beyond September 1, 2017.

27   5    **DIVISION OF PROPERTY**

28       5.1    The following property, whether community or separate, is awarded and confirmed to the

10

JUDGMENT

Petitioner as her sole and separate property, along with all encumbrances thereon and Petitioner shall hold

Respondent harmless therefrom:

  5.1.1    All household furniture, furnishings and appliances in Petitioner's possession and

control, including the lawnmower.  The Court shall retain jurisdiction in the event of a dispute.

  5.1.2    All household furniture, furnishings and appliances located in the former family

residence after Respondent's move-out date, except as set forth in 5.1.15, 5.2.1 and other related

provisions.

  5.1.3    All items of jewelry, clothing and personal effects, including but not limited to the

piano, in Petitioner's possession and control.

  5.1.4    2009 Honda Accord, California license number 6JZY236.

  5.1.5    Any and all bank accounts in Petitioner's name and control, including but not limited

to the following:

    5.1.5.1 Burbank City Federal Credit Union savings account number ending 388;

    5.1.5.2 Burbank City Federal Credit Union checking account number ending 388.

    5.1.5.3 Burbank City Federal Credit Union checking account number ending 2247.

  The parties shall execute any and all necessary documents in order to effectuate the transfer of the

aforementioned bank accounts into Petitioner's name only.

  5.1.6    Any and all interest in the business known as "Melaleuca" including but not limited

to all equipment, inventory, goodwill, cash, bank accounts, accounts receivables and liabilities.

  5.1.7    Any and all interest in Petitioner's "voice over" business including but not limited

to all equipment, inventory, goodwill, cash, bank accounts, accounts receivables and liabilities.

  5.1.8    AAA Life Insurance Company term life insurance policy number ending 5824.

Petitioner shall maintain said policy in full force and effect for so long as she is legally eligible to do so.

Petitioner shall use her best efforts to name the parties' minor child as the beneficiary.

  5.1.9    Any and all interest in the Disney stock account number ending 762, held by Merrill

Lynch, account number ending 4568.

  5.1.10  Any and all interest in the Disney Salaried Retirement Plan in Petitioner's name.

  5.1.11  Any and all interest in the account receivable payable by Linda Judd.  Respondent

11

JUDGMENT

K

Z:\Clients\Rizzo\JDA.092712.wpd

shall use his best efforts to assist Petitioner in the collection of said debt, including but not limited to providing Petitioner with Linda Judd's last known telephone number and address. In the event Linda Judd contacts Respondent at any time in the future when the account receivable is still owed, Respondent shall disclose the terms of this account receivable to Linda Judd and provide Linda Judd with Petitioner's contact information. The parties acknowledge that Linda has received the sum of approximately $13,762.

5.1.12  Real property located at 924 N. Keystone Street, Burbank, California 91506 (the "Family Residence"), and legally described as:

> Lot 25 of Tract No. 6552, in the City of Burbank, County of Los Angeles,
>
> State of California, as per map recorded in Book 25, Pages 44 to 46 inclusive
>
> of maps, in the office of the County Recorder of said county.

Except as specifically set forth herein, Petitioner shall indemnify and hold Respondent harmless with respect to any and all liability in connection with the Family Residence, including, but not limited, to the first deed of trust in the sum of approximately $452,000. Respondent shall execute any and all documents necessary, including a deed, to convey all of his right, title and interest in the Family Residence to Petitioner on or before October 30, 2012.

5.1.13  Respondent shall vacate the Family Residence on or before 60 days from the execution by both parties to this Stipulated Judgment, or on or before September 30, 2012, whichever shall first occur.  Petitioner shall occupy the Family Residence no later than October 1, 2012.

5.1.14  Respondent shall be responsible for the regular monthly mortgage payment, including utilities, through September 30, 2012, regardless of the date in which he vacates the Family Residence.

5.1.15  Upon Respondent vacating the Family Residence, he shall leave the Family Residence in a reasonable clean condition, including but not limited to sweeping, mopping, vacuuming, scrubbing bathrooms and other similar areas. Respondent shall mow the lawn and weeds prior to vacating the residence.  Respondent shall not remove any fixtures, including but not limited to the dishwasher, washer, and dryer.

5.1.16  The parties shall equally share the one-time cost to have the garage door spring repaired and/or replaced, if necessary, if it currently requires repair or replacement.

12

Z:\Clients\Rizzo\JDA.092712.wpd

1         5.1.17 Petitioner shall be permitted to inspect the Family Residence within 30 days from

2    July 19, 2012, accompanied by a third party to the inspection. Respondent shall vacate the Family

3    Residence during the inspection, but he may have a third party present (preferably Fred Upton, but not

4    Mitch Clark) during the inspection. The inspection shall be limited to 2.5 hours. The parties acknowledge

5    that said inspection has occurred, and that Fred Upton was the third party officiant.

6         5.1.18  The court shall reserve jurisdiction on the issue of any damage to the Family

7    Residence that exceeds normal wear and tear for the period between Petitioner's inspection of August 2,

8    2012 through Respondent's move-out date from the residence.  Such damages shall include, but shall not

9    be limited to a broken window, a hole in the wall, etc.

10        5.1.19  Petitioner shall assume all expenses associated with the Family Residence, including

11    but not limited to, the mortgage, property taxes, insurance, and utilities once Respondent's period of

12    possession has terminated, and she shall indemnify and hold Respondent harmless therefrom.

13        5.1.20  Petitioner shall inform Respondent as soon as reasonably possible if Petitioner is

14    unable to make a payment on the mortgage, or if she anticipates being more than 30 days late in any

15    payment.

16        5.1.21  The parties shall allocate the 2012 deductible mortgage interest according to the

17    mortgage payments made by each party to the extent permissible by law.  Commencing in 2013, and all

18    years thereafter, Petitioner shall be able to claim 100% of the mortgage interest tax deduction.

19       5.2    The following property, whether community or separate, is awarded and confirmed to the

20    Respondent as his sole and separate property, along with all encumbrances thereon and Respondent shall

21    hold Petitioner harmless therefrom:

22        5.2.1   All household furniture, furnishings, and appliances, other than the fixtures that shall

23    remain in the residence, presently in Respondent's possession which he elects to take with him upon his

24    relocation from the residence.

25        5.2.2   All items of jewelry, clothing and personal effects, including but not limited to the

26    saxophone, in Respondent's possession and control.

27        5.2.3   2004 Lexus, California license number 6DKV426.

28        5.2.4   Any and all bank accounts in Respondent's name and control, including but not

13

Z:\Clients\Rizzo\JDA.092712.wpd

1    limited to the Burbank City Federal Credit Union account number(s) ending 6340. If necessary, the parties

2    shall execute any and all necessary documents to effectuate the transfer of the aforementioned account into

3    Respondent's name only.

4            5.2.5    Any and all interest in the NetApp stock in Respondent's possession and control.

5            5.2.6    Any and all interest in the account receivable payable by Len Ramirez.

6       5.3    Timeshares:

7            5.3.1    Massanutten Time Share: The parties stipulate, and the Court finds that the

8    Massanutten Time Share has been gifted and transferred to a third party. Neither Petitioner nor Respondent

9    has any ownership interest in the Massanutten Time Share.

10            5.3.2    Grand Pacific Palisades Time Share: Petitioner and Respondent shall use his/her best

11    efforts to forthwith facilitate the transfer of ownership of the Grand Pacific Palisades Time Share to Alex

12    and Karen Careaga who have been paying the quarterly dues associated with the parties' timeshare.

13    **6**    **ASSIGNMENT OF DEBTS**

14       6.1    The following debts, whether community or separate, are assigned to the Petitioner, as

15    Petitioner's sole and separate debts, and Petitioner shall defend, indemnify and hold Respondent harmless

16    therefrom:

17            6.1.1    Any and all obligations, encumbrances, liens, debts and/or dues owed on any

18    property awarded and/or confirmed to Petitioner herein.

19            6.1.2    Any and all obligation owed to the Art Reproductive Center.

20            6.1.3    Personal loans owed to Emma Hendrickson.

21            6.1.4    Personal loan owed to Kelly Richman.

22            6.1.5    The Discover Card and JC Penney's credit card obligations in Petitioner's name.

23            6.1.6    The obligation owed to Honda Financial for the Honda Accord awarded to Petitioner

24    herein.

25            6.1.7    Any and all debt incurred by Petitioner from and after May 1, 2010 and not listed

26    herein.

27       6.2    The following debts, whether community or separate, are assigned to the Respondent, as

28    Respondent's sole and separate debts, and Respondent shall defend, indemnify and hold Petitioner harmless

14

JUDGMENT
Exhibit K

Z:\Clients\Rizzo\JDA.092712.wpd

therefrom:

      6.2.1   Any and all obligations, encumbrances, liens, debts and/or dues owed on any property awarded and/or confirmed to Respondent herein.

      6.2.2   All of the credit card obligations and/or debts as specifically set forth below in section 6.3.

      6.2.3   Any and all credit card obligations and/or debts in Respondent's name not otherwise provided for in section 6.3.

      6.2.4   Petitioner shall not be permitted to make any additional credit card charges after July 15, 2012 on the any of the four credit card accounts specifically assigned to Respondent below. The parties acknowledge that Petitioner incurred the sum of $224.00 in post-separation charges after July 15, 2012 on one of the four credit card obligations assigned to Respondent. Respondent will waive the sum of $224.00.

      6.2.5   The obligation owed to Burbank Federal Credit Union for the Lexus awarded to Petitioner herein.

      6.2.6   Any and all obligations owed to Robert Batkovic.

      6.2.7   The personal loan owed to Tom Rizzo.

      6.2.8   Any and all debt incurred by Respondent from and after May 1, 2010 and not listed herein.

   6.3    Credit Card Obligations

      6.3.1   Respondent shall assume the following credit card account debts as of July 15, 2012, regardless of the characterization of said credit card account debts:

          6.3.1.1 Disney Chase Visa account number ending 1857;

          6.3.1.2 American Express account number ending 6006;

          6.3.1.3 Citibank MasterCard account ending 7676; and,

          6.3.1.4 Burbank City Federal Credit Union Visa account number ending in 3108 and associated with Member Number 12247.

      6.3.2   Petitioner authorizes Respondent to communicate directly with the above-referenced credit card companies. Petitioner shall cooperate to provide Respondent with all necessary documents, telephone numbers and shall agree to participate in telephone calls.

15

JUDGMENT

6.3.3   Commencing July 23, 2012, Respondent shall commence making minimum payments on the Disney Chase Visa credit card. Respondent shall begin making the required payments on all other credit cards as set forth above as and when they become due in August, 2012. So long as Respondent continues to make the minimum monthly payment on each of the four credit card accounts, and is not more than thirty (30) days late on any credit card after October 2, 2012, he shall be deemed to be in full compliance with Section 6.3 of this Judgment.

6.3.4   The parties stipulate, and the Court finds that this section 6.3 is a material provision of this Stipulated Judgment. Respondent's payment of all credit card obligations is in lieu of base spousal support, exclusive of any Ostler and Smith percentage as awarded herein above.  The Court finds that Respondent acknowledges that he must pay all above-referenced credit card obligations, and in the event he fails to do so, or if Petitioner is required to pay any portion thereof, then Petitioner shall be entitled to reimbursement from Respondent, including any reasonable attorney's fees incurred in seeking such reimbursement.  In the event Respondent discharges any portion of the above credit card debt, whether through bankruptcy or other means, and Petitioner is required to pay any portion thereof, Respondent must still indemnify and hold Petitioner harmless therefrom, regardless of any bankruptcy judgment or discharge.

6.3.5   Respondent's default on the credit card debt is defined as non-payment of the credit card debt for 30 days other than through November 30, 2012 for the Citibank card, or more from the date he commences being obligated to make a monthly payment and/or Respondent filing a Petition for Bankruptcy. Should either one of the aforementioned events occur, than it shall constitute a change of circumstances warranting a modification of the base amount of spousal support.

6.3.6   In the event Respondent negotiates with the credit lender(s) to reduce the credit card debt, Respondent shall inform Petitioner in writing about the terms of such negotiations, decrease in debt or charge off of the credit card debt.

6.3.7   Respondent shall inform Petitioner as soon as reasonably possible if Respondent is unable to make a payment on the credit card debt(s), or if he anticipates being more than 30 days late in any payment.

7      **TAXES**

16

Z:\Clients\Rizzo\JDA.092712.wpd

7.1     The parties shall cooperate in filing joint 2011 state and federal income tax returns. Any 2011 refund shall be applied towards the tax liability owed for tax year 2010 if any such liability exists. The remaining refund, if any, shall be divided equally between the parties.

7.2     The parties shall equally share the preparation and/or accountant costs of their joint 2010 and 2011 tax returns. The costs shall be paid to the accountant, Paul Peligri, with proceeds from the parties' joint 2011 refund.

7.3     If either party receives notice of any deficiency assessed or proposed to be assessed with respect to any joint tax return previously filed by the parties, then that party or his/her representative shall notify the other party. Upon receiving notification from a party, the parties shall cooperate with each other in contesting, opposing, negotiating and settling such assessment or proposed assessment.

## 8     ATTORNEYS' FEES AND COSTS

8.1     Each party is ordered to be responsible for the payment of his/her own attorney's fees and costs incurred in connection with this dissolution proceeding up through the entry of Judgment, except as otherwise indicated herein.

## 9     AFTER DISCOVERED PROPERTY

9.1     The Court shall retain jurisdiction to resolve any disputes arising from such subsequently discovered community property or assets or community property debts.

## 10     WAIVERS AND RELEASES

10.1     The parties hereto waive all rights to reimbursement of the following:

10.1.1  Epstein credits, In re Marriage of Epstein (1979) 24 Cal.3d 761, and all rights of reimbursement to which a party may be entitled as a result of the payment of community obligations since the date of separation;

10.1.2  Watts credits, In re Marriage of Watts (1985) 171 25 Cal.App.3d 366, and all rights to reimbursement to which a party or the community may be entitled as a result of one party's use of community assets or receipt of community rental income since the date of separation;

10.1.3  All rights to reimbursement under Family Code §§2640 and 2641 or otherwise, for separate property contributed to the acquisition or maintenance of community property;

10.1.4  Jeffries reimbursements, In re Marriage of Jeffries (1991) 228 Cal. App. 3d 548, 278

17

Z:\Clients\Rizzo\JDA.092712.wpd

Cal. Rptr. 830.

10.1.5  Van Camp v. Van Camp (1921) 53 Cal.App. 17, and Pereira v. Pereira (1909) 156 Cal 1.

10.1.6  All rights to reimbursement under Family Code, §§915, 916 and 920;

10.1.7  All claims for reimbursement from the other party and/or community estate regarding loans or payments made to or on behalf of the parties and/or the community estate prior to or subsequent to the date of separation through the date of entry of the Judgment herein.

10.1.8  The Court finds that the parties understand and agree that the released claims are intended to and do include all claims, known or unknown, suspected or unsuspected, foreseen or unforeseen, which either Petitioner or Respondent have or may have against the other arising out of or relating to any transaction or event that occurred prior to the date of this Judgment, and Petitioner and Respondent hereby acknowledge that they expressly waive any and all rights or benefits they have or may have under Section 1542 of the California Civil Code. Section 1542 provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

## 11  WAIVER OF RIGHTS ON DEATH OF OTHER PARTY

11.1  The Court finds that, except as provided herein, each party hereby waives the right to receive any property or rights whatsoever on the death of the other, unless such right is created or affirmed by the other under a Last Will and Testament or other written document executed after the effective date of this Stipulated Judgment. The rights waived include, but are not limited to, rights to any of the following:

11.1.1  Property that would pass from the decedent by intestate succession;

11.1.2  Property that would pass from the decedent by testamentary disposition in a will executed before the execution of this Agreement;

11.1.3  A Probate Homestead;

11.1.4  The setting aside of exempt property;

18



JUDGMENT

Z:\Clients\Rizzo\JDA.092712.wpd

1    11.1.5 A family allowance;

2    11.1.6 The setting aside of an estate;

3    11.1.7 An election to take community or quasi-community property against the decedent's

4  will;

5    11.1.8 Statutory share of an omitted spouse;

6    11.1.9 An appointment as executor or administrator of the decedent's estate, except as a

7  nominee of a third party legally entitled to make such a nomination;

8    11.1.10 Property that would pass from the decedent by non-probate transfer such as the

9  survivorship interest under a joint tenancy or payable on death account;

10    11.1.11 The right or claim of dower, curtesy, or any statutory substitutive now or hereafter

11  provided under the laws of any state in which the parties may die domiciled or in which they may own real

12  property.

13  12    **MISCELLANEOUS PROVISIONS**

14    12.1    The Court orders each party not to incur any debt, liability or obligation as to which the

15  other is or may be liable. All liabilities and obligations hereafter incurred by either party shall be the sole

16  obligation of the party incurring said liabilities and obligations. Except as otherwise provided in this

17  Judgment, each party has released the other from any and all liabilities, debts or obligations that have been

18  or will be incurred, and each party is ordered to indemnify and hold the other free and harmless therefrom.

19  If any claim, action or proceeding hereafter is brought seeking to hold the other party liable on account of

20  any such debt, liability or obligation, he or she will, at his or her sole expense, defend the other against any

21  such claim or demand, or threat thereof, whether or not well-founded and hold the other harmless

22  therefrom, including the payment of reasonable attorneys' fees and costs in connection with any defense

23  thereto.

24    12.2    The Court orders that except as otherwise provided in this Judgment all property divided

25  pursuant to this Judgment shall become the property and/or obligation of the party so designated. The party

26  to whom property is transferred shall receive from the other party any and all documents and instruments

27  necessary to effectuate transfer of title.

28    12.3    The Court finds that Petitioner and Respondent, and each of them, have acknowledged and

19

Z:\Clients\Rizzo\JDA.092712.wpd

agreed that the division of their community property, quasi-community property, separate property, and debts and obligations is fair, just and equitable and represents an equal division of their community property, quasi-community property, separate property, and debts and obligations.

12.4    The Court finds that Petitioner and Respondent, and each of them, have acknowledged and agreed that they specifically intend the Judgment to be a final and complete settlement of all of their rights and obligations arising out of their marriage and otherwise, and that they have released each other, and the other's heirs, representatives, executors, administrators, and assigns, of and from any and all debts, obligations, liabilities, claims, demands, actions and causes of action of every kind, type or nature, without limitation, which either party has or may claim to have against the other.

12.5    The Court finds that the parties have identified and allocated various debts or obligations and have made various representations, warranties and the like to each other. With regard to any and all obligations, debts, representations, warranties and the like set forth in this Judgment, each party shall indemnify and hold the other harmless from any form of liability, claim, loss, cost or expense whatsoever in the event a claim is made against the other concerning any matter subject to this Judgment. This Order to indemnify and hold harmless is ordered to apply regardless of the validity of any such claim, and regardless of the forum, if any, in which the same is asserted. This Order to indemnify and hold harmless entitles the aggrieved party to reimbursement in full, including actual attorneys' fees and costs, if any, from the other party.

12.5.1 Petitioner and Respondent each represent and warrant to the other that he or she is not aware of any obligation of Petitioner or Respondent incurred prior to the date of their separation, other than the obligations described in this Judgment. In the event any obligations of Petitioner or Respondent which were incurred prior to the date of separation are subsequently discovered, the party incurring same shall indemnify the other from any and all liability arising therefrom or relating thereto and shall further hold the other party harmless from and against any and all costs and expenses, including reasonable attorneys' fees, relating thereto.

12.5.2 Except for any debt of obligation that Petitioner or Respondent created or assumed under this Judgment, Petitioner and Respondent, respectively, shall each pay and hold the other harmless, respectively, from all outstanding debts and obligations not otherwise paid, incurred by him or her,

20



JUDGMENT

1  respectively, since and after the date of their separation to third parties; and if any claim, action or
2  proceeding is hereafter sought seeking to hold the other liable on account of such debts or obligations, such
3  party will, at his or her sole expense, defend the other party against any such claim, action or proceeding,
4  and indemnify the other party from any and all liability arising therefrom or relating thereto and shall
5  further hold the other party harmless from and against any and all costs and expenses, including reasonable
6  attorneys' fees, relating thereto.

7      12.6    Except as otherwise set forth and provided for in this Judgment, the Court finds that each
8  party shall own and hold all property received by him or her under the terms of this Judgment and all
9  earnings, accumulations, and other property acquired after the date of separation of the parties and
10 thereafter acquired as his or her sole and separate property, free from any claim of the other (except as
11 expressly provided in this Judgment) or of any creditor of the other by reason of the Community Property
12 Laws of the State of California, or by reason of any other law or fact. No party shall be liable for any debt
13 or obligation of the other unless said debt and/or obligation is specifically imposed by the terms and
14 provisions of this Judgment.

15     12.7    Each party has conducted some informal and formal discovery and investigation of the
16 issues and facts in this case, including discovery and investigation into the assets and obligations of the
17 parties and the community. Having conducted such discovery and investigation, each party is willing to
18 proceed with this Stipulated Judgment based upon the information he or she has. Each party waives a full
19 evidentiary hearing on the merits with respect to the issue and facts resolved by this Judgment.

20     12.8    The Court finds Petitioner and Respondent entered into this Judgment without resorting to
21 all discovery proceedings permitted by law, and specifically does not, by the execution of this Judgment,
22 waive the benefit of the fiduciary obligation on the part of the other, to make a full disclosure of the
23 existence of any community, quasi-community property, and any separate property to the other. The Court
24 finds that each of the parties has relied on the representation of the other that all of the property in which
25 the parties have any interest, whether separate, community, or quasi-community, is set forth in this
26 Judgment.

27     12.9    Each party agrees and acknowledges that his or her counsel has not made any
28 representations to that party regarding the tax consequences of tax effect or any of the matter set forth

21

Z:\Clients\Rizzo\JDA.092712.wpd

1  herein, and has instead advised him or her to seek the assistance of an accountant and/or tax attorney to

2  provide advice as to the tax consequences of this Stipulated Judgment or any ramifications thereof.

3        12.10   Each of the parties hereto is ordered to execute promptly all documents and instruments now

4  or hereafter reasonably necessary or convenient to vest the titles and estates in them respectively as herein

5  provided, and at any time and from time to time shall execute all other instruments and documents which

6  may be necessary or proper to effect the purpose and intent of this Judgment. In the event that either party

7  shall refuse to execute any such document or instrument, the Court, upon ex parte application therefor, after

8  five (5) days' notice, may order the County Clerk to execute such needed documents. Notwithstanding the

9  failure or refusal of either party to execute any such instrument, this Judgment shall constitute a full and

10 complete transfer and conveyance of the properties herein designated as being transferred, conveyed or

11 assigned by each party.

12        12.11   The party receiving specific property under this Judgment shall be entitled to and the other

13 party is ordered to transfer and assign to him or her, all of his or her right, title and interest in and to

14 whatever insurance exists with respect to such property and the benefits, if any, with respect to the

15 premiums heretofore paid for on account of such insurance. Each party receiving such specific property

16 and the insurance applicable thereto shall be solely responsible for the payment of all premiums thereafter

17 due in connection with such insurance policy, if such person shall decide in his or her sole discretion to

18 maintain said policy in force.

19        12.12   Except as expressly provided herein, the party receiving specific property under the

20 Judgment is ordered to pay, from and after the date hereof, all taxes and encumbrances assessed against

21 such property and all other debts, obligations, claims, judgment, costs and expenses related to such property

22 and is ordered to defend, indemnify and hold the other harmless therefrom.

23        12.13   The Court finds that nothing in this Judgment, whether express or implied, is intended to

24 confer any rights or remedies under or by reason of this Judgment on any persons other than the parties

25 hereto and their respective successors and assigns, nor is anything in this Judgment intended to relieve or

26 discharge the obligation or liability of any third persons to any party to this Judgment, nor shall any

27 provision give any third persons any right of subrogation or action over or against any party in this

28 Judgment.

22

---

JUDGMENT

Z:\Clients\Rizzo\JDA.092712.wpd



K

366

1          12.14  The Court finds that the waiver or any breach of this Judgment shall not be deemed a waiver

2  of any subsequent breach, or of any provisions in this Judgment.

3          12.15  The Court finds that  the parties have exchanged their Final Declaration of Disclosure as

4  required by the <u>California Family Code</u>.

5          12.16  In the event of a reconciliation between the parties hereto and/or any subsequent

6  cohabitation between the parties, this Judgment, and each and every term contained herein, shall continue,

7  nevertheless, in full force and effect.

8          12.17  The Los Angeles Superior Court shall retain jurisdiction to enforce the terms and conditions

9  of the Judgment as provided herein.

10  ///

11  //

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

JUDGMENT

1    12.18   The Court finds that each party has stipulated and agreed that this cause may be tried as an

2  uncontested matter, has waived the right to notice of trial, to request findings of fact and conclusions of

3  law, to request a statement of decisions to move for a new trial, and to appeal, and has waived the time

4  periods in which any of said rights may be exercised and has stipulated and agreed that this matter may be

5  tried by a commissioner sitting as a temporary judge.

6

7  **THE FOREGOING IS AGREED TO BY:**

8  DATED: 9/27/12

9  _____
   JENNIFER ANNETTE RIZZO, Petitioner

10  DATED: 9/27/12

11  _____
    MICHAEL RIZZO, JR., Respondent

12  DATED: 9/27/12

    FEINBERG, MINDEL, BRANDT &KLEIN, LLP

13

14

15  _____
    By: TAYLOR BOUCHARD,
    Attorney for Petitioner

16  DATED: 9/27/12

17  LAW OFFICE OF CHRISTINE V. TWINING

18

19  _____
    By: CHRISTINE V. TWINING,
    Attorney for Respondent

20  DATED:   DEC 11 2012

21

22

23  _____
    JUDGE OF THE SUPERIOR COURT

24        SCOTT M. GORDON

25

26

27

28

                         24

I certify that this is a true and correct copy
of the original *Judgment* on
file in this office

AUG 03 2015

SHERRI R. CARTER, Executive Officer/Clerk of
the Superior Court of California County of Los Angeles

By: _____ , Deputy
B. CLARK

39

K